# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-1071 |
| CALVIN UNIVERSITY and SILLIMAN UNIVERSITY, DWIGHT TENHUISEN | HONORABLE PAUL L. MALONEY |
| | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS
## CALVIN UNIVERSITY AND DR. DWIGHT TENHUISEN'S MOTION TO DISMISS

*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.*

1

**INTRODUCTION & CONCISE STATEMENT IN SUPPORT OF POSITION**

Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe") sued Defendants Calvin University ("Calvin") and Dr. Dwight TenHuisen ("Dr. TenHuisen") (collectively, "Defendants"[1]) because she was drugged and raped by a Silliman University "buddy" during a Calvin study abroad program planned and supervised by Dr. TenHuisen. Defendants argue that Plaintiff cannot claim violation of Title IX, as a matter of law, based on the faulty premise that because Plaintiff's rape occurred abroad they are entirely exempt from Title IX.[2] *First*, Defendants' argument ignores the well-pleaded facts in the Complaint showing that prior to the Program, Calvin demonstrated a policy of deliberate indifference to the obviously necessary training and guidance required to protect female students from sexual assault. These allegations state a Title IX claim for events occurring in the United States and Defendants' motion should be denied. *Second*, contrary to Defendants' assertion otherwise, Title IX applies to study abroad programs based on persuasive case law in this Circuit and application of the Supreme Court's decision in *Morrison*. *Third*, the 2020 Department of Education regulations cited by Defendants were enacted following Defendants' misconduct and may not be applied retroactively. For the reasons discussed herein, Plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss.

**FACTUAL BACKGROUND**

As alleged in the Complaint, Plaintiff is a fourth-generation Calvin student who was raised in the church and chose to attend Calvin because of the great importance faith played in her life. (*See* PageID.3 at ¶¶ 13-14.[3]) Plaintiff was a model Calvin student and cared very

---

[1] Plaintiff also filed suit against Silliman University ("Silliman")—the university in the Philippines that Calvin partnered with for the student abroad program in which Plaintiff participated. Service of process is underway and Silliman has not yet answered the Complaint.
[2] The Complaint alleges violation of Title IX against only Calvin. (*See* PageID.23)
[3] In accordance with Local Civil Rule 10.9, citations to the Record are cited to PageID.

2

deeply her for alma mater. (PageID.3 at ¶¶ 15-16.) Prior to the rape, Plaintiff took comfort in knowing that she could trust that Calvin to do its best to keep her safe. (PageID.4 at ¶ 17.)

Calvin is a private Christian university that provides interim study abroad programs for students during the month of January. (PageID.4 at ¶¶ 20-21.) Calvin maintained policies and procedures for the interim programs relating to student safety and protection against sexual assault, but these policies were outdated and not readily available and accessible for students like Plaintiff to review. (PageID.4 at ¶ 23.) Even so, the policies required program sponsors to (1) submit detailed itineraries and information about the program destination, (2) participate in training, (3) develop risk management plans, in accordance with a template, that include information about sexual assault and harassment, (4) lead orientation sessions with students reviewing the risk management plans, and (5) lead discussions with students about sexual assault to increase awareness and teach students ways to reduce vulnerability, among other things. (PageID.5 at ¶ 24.) Calvin told students and parents that it was "especially committed to [student] safety and well-being" during the Program. (PageID.5 at ¶ 25.) Calvin was aware of the risk of off-campus sexual assault for its female students in particular, which by Calvin's own survey make up 91% of all sexual assault victims. (PageID.7 at ¶ 41.)

Plaintiff enrolled in a study abroad program in the Philippines sponsored by Calvin and Dr. TenHuisen, and in partnership with Silliman, scheduled for January 7-29, 2020 (the "Program"). (PageID.8 at ¶ 45.) Prior to the Program, Dr. TenHuisen held only one orientation session with students, lasting about 90 minutes. (PageID.8 at ¶ 48.) Dr. TenHuisen did not address sexual assault or harassment during this orientation except to convey generally that female participant should dress conservatively, not go out alone, and limit alcohol consumption. (PageID.9 at ¶ 49.) Dr. TenHuisen distributed handouts that

3

directed participants to review safety information on a student orientation page, but the handouts failed to provide a web address that students could utilize to do so. (PageID.9 at ¶ 49.) Upon arrival in the Philippines, students were given a presentation with information related to the Program. (PageID.9 at ¶ 50.) Again, sexual assault and harassment were not addressed. (PageID.9 at ¶ 50.) In direct violation of Calvin's Sexual Assault Protocol, Dr. TenHuisen never discussed the topics of sexual assault or harassment with the participants. (PageID.9 at ¶ 51.)

Dr. TenHuisen also designated himself as the sole chaperone for the Program and Calvin granted his waiver to not have additional chaperones. (PageID.9 at ¶ 53.) Instead, for safety measures, Dr. TenHuisen employed a partner system whereby the participants were divided into groups of two; male participants were partnered with other males and female participants were partnered with other females. (PageID.9 at ¶ 55.) Ms. Doe was not provided a partner due to an odd number of female participants. (PageID.9 at ¶ 56.)

Calvin did not arrange Ms. Doe's travel to Chicago for departure to the Philippines, which was a change in practice from previous years and inhibited Ms. Doe from building a relationship with other participants on the bus ride to the airport. (PageID.8 at ¶ 47.) Twenty-two student participants from Calvin met in Chicago, along with Dr. TenHuisen, and traveled to the Philippines. (PageID.8 at ¶¶ 45, 47.) Calvin and Dr. TenHuisen made all travel arrangements in the Philippines for students. (PageID.8 at ¶ 47.) Because Ms. Doe did not have a partner assigned, she was placed in a hotel room by herself. (PageID.10 at ¶ 57.)

Silliman selected student "buddies" from its university to serve as hosts and translators for the Calvin students. (PageID.1 at ¶ 2.) On the evening of January 17, 2020, Ms. Doe attended a Program dinner with her Calvin classmates and the Silliman "buddies." (PageID.10

at ¶ 59.)  The Silliman "buddies" invited Ms. Doe and her classmates to accompany them to Cafe Racer, a bar and dance club located in Dumaguete, Philippines, to continue their celebration. (PageID.10-11 ¶ 61.)  Dr. TenHuisen chose not to join them, and rather, told the students via text message to go out, have fun, and not do anything stupid. (PageID.10-11 ¶ 61.)  Around 10:30pm that night, a Silliman "buddy" laced Ms. Doe's drink with an incapacitating drug; he then drove her to an unrecognized location and raped her as she fell in and out of consciousness. (PageID.11-12 ¶¶ 64-74.)

## ARGUMENT

A complaint survives a motion to dismiss if the facts alleged, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "This standard does not require detailed factual allegations," but requires a complaint to allege more than "a suspicion" of a legally cognizable claim.  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012). Properly pleaded facts may not be disregarded, even if a savvy judge anticipates that actual proof of those facts may be improbable and recovery is unlikely.  *Twombly*, 550 U.S. at 556.

Plaintiff's Complaint satisfies the pleading requirements and sets forth sufficient facts to show a plausible claim for relief.  First, Plaintiff pleads facts showing Calvin's pre-assault policy of deliberate indifference to the risk of Plaintiff's sexual assault during the Program, in violation of Title IX, based on events in the United States.  Second, contrary to Defendants' assertion otherwise, Title IX applies to study abroad programs.  Third, the Department of Education guidance cited by Defendants was issued after Plaintiff's rape and does not apply retrospectively. For the reasons discussed herein, Plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss.

I.      **Plaintiff's allegations of Calvin's pre-assault conduct show a policy of deliberate indifference to protecting participants from sexual assault and states a Title IX claim.**

Plaintiff pleads a Title IX claim against Defendants with respect to their policy of deliberate indifference to sexual violence. Several courts have now declared that an institution may be liable for instances of sexual violence where "a third party's actions are the direct result of an official policy." *Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788, 804 (M.D. Tenn. 2016); *see also Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1178–79 (10th Cir. 2007). These cases, known as pre-assault claims, arise where the Title IX violation "is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program." *Simpson*, 500 F.3d at 1178.

In this case, it is obvious that participants should have received training and guidance about sexual assault in order for the Program to be safely implemented. Calvin's own policies and procedures acknowledge the risk of sexual assault when traveling abroad, and thus, require pre-program planning and training. However, Calvin took no steps to ensure that Dr. TenHuisen complied with these policies, and in fact, Plaintiff received no preparation for the risk of sexual assault that she encountered during the Program. Plaintiff's Title IX claim is grounded in Calvin's inaction and laissez-faire approach to the risk of sexual violence prior to her travel abroad. Plaintiff alleges that Calvin's conduct amounts to an official policy of deliberate indifference to the risks of sexual assault during the Program. (PageID.8-10 at ¶¶ 45-59, PageID.26-28 at ¶¶ 147-159.) These allegations state a plausible, pre-assault Title IX claim requiring no extraterritorial application. Accordingly, Defendants' motion should be denied.

II.     **Title IX applies to study abroad programs operated by American universities abroad.**

Plaintiff's Title IX allegations center on Calvin's pre-assault conduct, as explained *supra*. However, even assuming *arguendo* that Plaintiff's assault in the Philippines is the focus of her

Title IX claim, case law precedent does not bar Plaintiff from stating this claim against Defendants. Defendants argue that Title IX does not apply to claims for occurrences outside of the United States. In doing so, Defendants ignore a district court opinion in this Circuit holding otherwise and misapply the United States Supreme Court holding in *Morrison*.

One district court in this Circuit has determined that study abroad programs, such as the Program at issue here, "are explicitly covered by Title IX" as they require students to leave the United States to pursue the educational opportunity offered. *King v. Bd. Of Control of E. Mich. Univ.*, 221 F. Supp. 2d 786, 788 (E.D. Mich. 2002). "Title IX in broad language, not limited by any exception for study abroad programs, sweeps within its scope ***every single university program***." *Id.* (emphasis added). Defendants do not cite this case in their motion despite its direct applicability to the arguments presented here.

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. A "program or activity" is defined to include "all operations of . . . a college, university, or other postsecondary institution, or a public system of higher education." 20 U.S.C. § 1687(2)(A). Specific exemptions to Title IX are set forth in § 1681(a)(1)–(9), none of which make any mention of study abroad programs. The *King* court decided that the statutory language, legislative history, implementing regulations, and agency guidance show that Title IX was intended to "be interpreted broadly to give it full and far reaching effect." 221 F. Supp. 2d at 789. Thus, "Congress intended extraterritorial application of Title IX where so required, i.e., where the education program or activity makes it necessary for a student to leave the territorial limits of the United States in order to avail him or herself of the educational opportunities offered." *Id.* at 790-91.

7

In this case, Calvin promoted its interim programs to students as opportunities to "grow culturally, spiritually, and academically."[4] These programs were created and run by Calvin and its faculty.[5] Enrollment in the Program made it necessary for Plaintiff to leave the territorial limits of the United States in order to avail herself of this educational opportunity. If this Court determines that Title IX does not apply to the Program, then the educational opportunity provided by the Program is not equally open to participation regardless of sex—a violation of Title IX. *See King*, 221 F. Supp. 2d at 790-91. "Equality of opportunity in study abroad programs, unquestionably mandated by Title IX, requires extraterritorial application of Title IX." *Id.* at 791. For these reasons, Defendants' argument should be rejected.

Defendants cite the Supreme Court's decision in *Morrison* in support of their argument. (PageID.216-217) *Morrison* held that a private right of action under Section 10(b) of the Securities Exchange Act could only be maintained if the security at issue was listed on an American stock exchange or transacted in the United States. *Morrison v. Nat'l Austl. Bank Ltd*, 561 U.S. 247 (2010). The Supreme Court reinforced the "presumption against extraterritoriality," meaning that a statute is presumed to stop at the borders of the United States, absent clear congressional intent otherwise. *Id.* at 255. The Supreme Court devised a two-step framework for analysis: (1) whether the statute gives a clear, affirmative indication that it applies extraterritoriality, or (2) whether the conduct relevant to the statute's focus occurred in the United States. *Id.* at 255, 266-67. *See also RJR Nabisco Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016) ("If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad . . .") Defendants cite to a case in the Western

---

[4] https://calvin.edu/offices-services/off-campus-programs/programs/
[5] *Id.* There are off-campus programs that are not run and operated by Calvin and in fact, Calvin itself makes a distinction between its own off-campus programs, and those programs that are "[n]on-Calvin."[5]

8

District of Missouri that relied on *Morrison* to hold that Title IX's plain language does not indicate Congressional intent for extraterritorial application. (PageID.217 *citing Doe T.L.J. v. Univ. of Central Missouri*, 4:20-714-CV-RK, 2020 WL 7700101 (W.D. Mo. December 28. 2020)).

The Missouri court reached the wrong result, and this Court should not apply its holding here. As an initial matter, the Missouri case has no precedential effect because it is from a district court in different circuit. More substantively, the *Doe* court erred in applying *Morrison* because the facts of *Morrison* are so distinguishable from the Title IX study abroad cases like Plaintiff's. In *Morrison*, *foreign* investors sued an *Australian* bank alleging securities frauds relating to *foreign* transactions. *See* 561 U.S. 247. In this case, as in *Doe*, an American student brought a claim against an American University for events relating to their American educational program. The Sixth Circuit has limited *Morrison*'s reach to cases presenting significantly different circumstances. *See Lay v. United States*, 623 Fed. Appx. 790, 796 (6th Cir. 2006) (finding that *Morrison* did not extend to the Investment Advisors Act because "unlike *Morrison*, the plaintiff (United States) and defendant (Lay) are United States citizens," "the fraudulent conduct took place primarily in the United States" and "the only non-domestic component in this case is that the fund in question is domiciled in Bermuda").

However, even applying *Morrison*, Plaintiff's Title IX claim survives. First, as discussed in *King*, the language of Title IX, especially when viewed along with its legislative history, implementing regulations, and agency guidance, indicates congressional intent for it to apply to all educational programs including those abroad. *See* 221 F. Supp. 2d at 790-91. One of the Senators sponsoring the bill stated that any exceptions to Title IX's protections would be limited and that once a student was accepted to a university or college, "we permit no exceptions." *See* 118 *Cong.Rec.* 5804, 5812. As acknowledged by the *King* court, these statements indicate a clear

congressional intent that there be no exceptions for programs or activities except as explicitly provided in Title IX. *King*, 221 F.Supp.2d. at 789. Study abroad programs are not listed in Title IX's exceptions. *See* 20 U.S.C. § 1681(a)(1)-(9). Because Congressional intent is clear that Title IX was to be applied to all programs and activities not specifically exempted, there is no presumption against extraterritoriality under *Morrison* and this Court should deny Defendants' Motion to Dismiss.

Second, the conduct relevant to Title IX's focus, in this case, occurred in the United States. The critical question from *Morrison* is whether the conduct relevant to the statute in question occurred in the United States. *See United States v Hussain*, 972 F3d 1138, 1142 (9th Cir. 2020) *citing RJR Nabisco,* 136 S. Ct. at 2101. As discussed in detail above, the only component of this case that did not occur in the United States was the rape. Before the Program, Calvin failed to develop robust and adequate sexual assault and harassment policies and failed to follow the meager protocols that were in place. In fact, the only thing Defendants did to protect Plaintiff from sexual assault was telling her to dress conservatively, limit alcohol, and not out alone. The Complaint alleges conduct amounting to a policy of deliberate indifference to sexual violence, which is exactly what Title IX was intended to address. *See Karasek v. Regents of University of California*, 500 F. Supp. 3d 967, 977 (N.D. Cal. 2020) ("[W]hen a plaintiff is sexually assaulted, he or she has a cause of action against a university for its policy of deliberate indifference to reports of sexual misconduct that created a 'sexually hostile environment' for and heightened risk of sexual assault or harassment to the plaintiff."); *see also Doe 1 v. Baylor University*, 240 F. Supp. 3d 646, 660 (W.D. Tex. 2017) (finding that Plaintiffs stated a Title IX claim based on allegations that the school was deliberately indifferent to reports of sexual

assault). Under *Morrison*, the misconduct relevant to Title IX occurred in the United States and Defendants' Motion to Dismiss should be denied.

III. **The Department of Education guidance cited by Defendants was issued after Plaintiff's rape and does not apply retrospectively.**

Defendants argue that the Department of Education comments to their 2020 regulations preclude this Court from finding that Title IX applies extraterritorially. *See* 85-FR 30026-01 ("2020 Guidance") available at 2020 WL 2525707. Specifically, Defendants assert that because the 2020 Guidance interprets the language of Title IX to mean that it does not have extraterritorial application, this Court is therefore prohibited from conducting any further analysis. (PageID.218-219) However, Defendants fail to cite the 2020 Guidance's prohibition on retrospective application, as follows:

> The Department understands commenters' desire to require recipients who have previously conducted grievance processes in a way that the commenters view as unfair to reopen the determinations reached under such processes. However, **the Department will not enforce these final regulations retroactively.**

85 FR 30026—01, 2020 WL 2525707 at *30061 (emphasis added).

In a recent case involving Title IX, one court expressly declined to apply the 2020 Guidance retroactively. *See Doe v Washington Univ*, No. 4:19 CV 300 (JMB), 2021 WL 322770, at *3 (E.D. Mo, February 1, 2021) (considering the plaintiff's argument that the court should "take into account new Department of Education regulations that took effect on August 14, 2020" and stating that "[c]ontrary to plaintiff's assertion that the new rules apply to his case, the Department of Education declined to apply the new rules retroactively"). Indeed, courts give deference to federal agencies' direction about retrospective application of their guidance. *See Beneli v Natl Labor Relations Bd*, 873 F. 3d 1094, 1098 (9th Cir. 2017) ("[W]here, as here, it is clear from the [National Labor] Board's decision that it considered the question of retroactive versus prospective

11

application, and it provided a reasoned explanation for its choice, we are inclined to give considerable deference to the Board's expertise.").

Here, the rape occurred on January 17, 2020, nearly seven months before the 2020 regulations went into effect. Moreover, the conduct, or lack thereof, that is the focus of Plaintiff's claim occurred in the months leading up to the rape, well before the Department's new rules. Therefore, pursuant to the 2020 Guidance, the Department's interpretation of Title IX regarding extraterritoriality is not applicable to the instant matter. *See Washington Univ.*, 2021 WL 322770, at *3.

Moreover, the Department of Education has provided conflicting guidance in the past, highlighting the controversial nature of this interpretation. In 2014, the Department of Education issued a document titled "Questions and Answers on Title IX and Sexual Violence"[6] explaining that under Title IX, "a school must process all complaints of sexual violence, **regardless of where the conduct occurred,** to determine whether the conduct occurred in the context of an education program or activity or had continuing effects on campus or in an off-campus education program or activity." DOE Questions and Answers at 30. The Questions and Answers issued in 2014 evidence the Department's intent, at the time, for Title IX to apply to acts of sexual violence occurring outside of the United States during educational programs.

In any event, the regulations Defendants cite do not apply to the allegations in the Complaint. Plaintiff states a claim for violation of Title IX based on Defendants' pre-Program

---

[6] On April 29, 2014, the Department of Education, Office of Civil Rights ("OCR") issued "Questions and Answers on Title IX and Sexual Violence" in response to a number of questions the OCR had received. The Department deemed that the document was a "significant guidance document" under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices. The Questions and Answers have since been rescinded. https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf ("DOE Questions and Answers").

conduct in the United States. Moreover, even considering whether Plaintiff's claim requires extraterritorial application of Title IX and application of *Morrison*, Title IX applies to the Program at issue here. Defendants' motion should be denied, and this case allowed to proceed to discovery for resolution of Plaintiff's Title IX claim on the merits.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss her Title IX claim against Calvin.

Date, April 4, 2022                                    Respectfully submitted,

By: /s/ Esther C. Yahnig
ESBROOK P.C.
Esther C. Yahnig
Erika Giwa-Amu
77 West Wacker, Suite 4500
Chicago, Illinois 60601
Telephone: 312.319.7681
esther.yahnig@esbrook.com
erika.giwa-amu@esbrook.com

THACKER SLEIGHT
Allison Sleight
44 Cherry Street SE
Grand Rapids, Michigan 49503
Telephone:       616.888.3810
allison@thackersleight.com

*Counsel for Plaintiff Jane Doe*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JANE DOE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CALVIN UNIVERSITY and SILLIMAN UNIVERSITY, DWIGHT TENHUISEN<br><br>　　　　Defendants. | Case No. 1:21-cv-1071<br><br>HONORABLE PAUL L. MALONEY<br><br>**CERTIFICATE OF RULE COMPLIANCE** |

## CERTIFICATE OF RULE COMPLIANCE

Esther Yahnig, counsel for Plaintiff Jane Doe, certifies that Plaintiff's Memorandum in Opposition to Defendants Calvin University and Dr. Dwight TenHuisen's Motion to Dismiss contains 3,674 words, using Microsoft Office 365 2022, in compliance with Local Civil Rule 7.2(b)(i)(ii).

Dated: April 4, 2022

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　By: /s/ Esther C. Yahnig
　　　　　　　　　　　　　　　　　　ESBROOK P.C.
　　　　　　　　　　　　　　　　　　Esther C. Yahnig
　　　　　　　　　　　　　　　　　　Erika Giwa-Amu
　　　　　　　　　　　　　　　　　　77 West Wacker, Suite 4500
　　　　　　　　　　　　　　　　　　Chicago, Illinois 60601
　　　　　　　　　　　　　　　　　　Telephone: 312.319.7681
　　　　　　　　　　　　　　　　　　esther.yahnig@esbrook.com
　　　　　　　　　　　　　　　　　　erika.giwa-amu@esbrook.com

　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff Jane Doe*