| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-1071 |
| CALVIN UNIVERSITY and SILLIMAN UNIVERSITY, DWIGHT TENHUISEN | HONORABLE PAUL L. MALONEY |
| | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MEMORANDUM OF RESPOSNE IN OPPOSITION TO DEFENDANT**
**<u>SILLIMAN UNIVERSITY'S MOTION TO DISMISS</u>**

*<u>THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.</u>*

**INTRODUCTION & CONCISE STATEMENT IN SUPPORT OF POSITION**

Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe") sued Defendant Silliman University ("Silliman") because she was drugged and raped by a Silliman "buddy" that was selected by Silliman to participate in the January 2020 Interim Program that was planned and supervised, in part, by Silliman. Silliman argues that Plaintiff cannot claim they acted negligently for a variety of reasons, all which fail as a matter of law. *First,* Plaintiff is domiciled in North Carolina and therefore, this Court has diversity subject matter jurisdiction. In addition, this Court has supplementary jurisdiction over the state-law claims because they share the same nucleus of operative fact as the Title IX claim. *Second,* this Court may exercise personal jurisdiction over Silliman because Silliman transacted business with Calvin University, a Michigan school, and the exercise of jurisdiction comports with due process. *Third*, the foreseeability of Plaintiff's attack is a question of fact and Plaintiff has pled a legally cognizable claim. For the reasons discussed herein, Plaintiff respectfully requests the Court deny Silliman's Motion to Dismiss.

**FACTUAL BACKGROUND**

Silliman is a private university located in Dumaguete, Philippines. (ECF. No. 1. at PageID.6 at ¶ 27.)[1] As alleged in the Complaint, Plaintiff was drugged and raped by a Silliman student who was designated by Silliman as a "buddy" for Calvin University ("Calvin") students on a study abroad program. (*Id.* at PageID.1 at ¶ 2, PageID.8 at ¶ 45, PageID.10 at ¶ 59, PageID.11-12 ¶¶ 64-74.)

Plaintiff is a fourth-generation Calvin student who was raised in the church and chose to attend Calvin because of the great importance faith played in her life. (*See* ECF. No. 1., PageID.3 at ¶¶ 13-14.) Plaintiff was a model Calvin student and cared very deeply her for alma mater. (*Id.*

---

[1] In accordance with Local Civil Rule 10.9, citations to the Record are cited to PageID.

at PageID.3 at ¶¶ 15-16.) Prior to the rape, Plaintiff took comfort in knowing that she could trust Calvin to do its best to keep her safe. (*Id.* at PageID.4 at ¶ 17.)

Silliman and Calvin entered into a Memorandum of Agreement ("MOA") whereby the parties "agreed to develop collaborative activities in academic areas of mutual interest, on the basis of equality and reciprocity." (*Id.* at PageID.6 at ¶ 28.) Silliman agreed to "accept such collaborative offer and provide CALVIN's students with the appropriate cultural exposure." (*Id.* at PageID.6 at ¶ 29.) Pursuant to the MOA, Silliman was to "'prepare the program' subject to Calvin's approval including a schedule of class session and outside activities." (*Id.* at PageID.6 at ¶ 30.) Further, Silliman "agreed to owe a duty of care to the student participants to the extent that it shall 'be responsible for [Calvin students] security and safety when they are outside the campus during business and cultural exposures.'" (*Id.* at PageID.6 at ¶ 31.) Silliman and Calvin agreed that "[t]he personnel provided by [Silliman] will be under the control of [Silliman], regardless of whether Calvin provide daily direction and supervision." (*Id.* at PageID.6 at ¶ 32.)

Plaintiff enrolled in a study abroad program in the Philippines sponsored by Calvin and Dr. TenHuisen, and in partnership with Silliman, scheduled for January 7-29, 2020 (the "Program"). (*Id.* at PageID.8 at ¶ 45.) Silliman selected student "buddies" from its university to serve as hosts and translators for the Calvin students. (*Id.* at PageID.1 at ¶ 2.) On the evening of January 17, 2020, Ms. Doe attended a Program dinner with her Calvin classmates and the Silliman "buddies." (*Id.* at PageID.10 at ¶ 59.) The Silliman "buddies" invited Ms. Doe and her classmates to accompany them to Cafe Racer, a bar and dance club located in Dumaguete, Philippines, to continue their celebration. (*Id.* at PageID.10-11 at ¶ 61.) All 22 of the participants accompanied the six Silliman "buddies" to Café Racer. (*Id.* at PageID.11 ¶ 62.) Dr. TenHuisen chose not to join them, and rather, told the students via text message to go out, have fun, and not do anything stupid.

(*Id.* at PageID.10-11 ¶ 61.) Around 10:30pm that night, a Silliman "buddy" laced Ms. Doe's drink with an incapacitating drug; he then drove her to an unrecognized location and raped her as she fell in and out of consciousness. (*Id.* at PageID.11-12 ¶¶ 64-74.)

## ARGUMENT

A complaint survives a motion to dismiss if the facts alleged, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "This standard does not require detailed factual allegations," but requires a complaint to allege more than "a suspicion" of a legally cognizable claim. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012). Properly pleaded facts may not be disregarded, even if a savvy judge anticipates that actual proof of those facts may be improbable and recovery is unlikely. *Twombly*, 550 U.S. at 556. To survive a nonresident defendant's motion to dismiss, the plaintiff must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Plaintiff's Complaint meets the pleading requirements with respect to subject matter jurisdiction, personal jurisdiction, and sets forth sufficient facts to state a plausible claim for relief. First, Plaintiff adequately alleges her state of citizenship such that diversity subject matter jurisdiction is proper. Second, contrary to Silliman's assertion otherwise, this Court has supplemental jurisdiction over the state-law claims. Third, the exercise of personal jurisdiction over Silliman is proper and comports with due process requirements. Finally, Plaintiff pleads facts showing that Silliman breached the duty of care it owed Plaintiff with respect to the foreseeable assault and rape that took place on the Program. For the reasons discussed herein, Plaintiff respectfully requests this Court deny Silliman's Motion to Dismiss.

## I. COMPLETE DIVERSITY EXISTS BECAUSE PLAINTIFF'S DOMICILE IS IN NORTH CAROLINA.

Silliman argues that this Court does not have subject matter jurisdiction because Plaintiff did not allege her state of citizenship, but rather her place of residence at the time the Complaint was filed. (ECF No. 20, PageID.5.) Therefore, according to Silliman, this Court's only option is to dismiss the case entirely for lack of subject matter jurisdiction. (*Id*. at PageID.6.) Silliman is wrong for two reasons. First, Plaintiff is domiciled in, and a citizen of, North Carolina. (*See* Exhibit A, Affidavit of Plaintiff.) That Plaintiff used the word "residence" does not warrant dismissal of the Complaint. Second, even if the Complaint does not sufficiently allege diversity jurisdiction because it does not contain the word "domicile," this Court should grant Plaintiff leave to amend and fix the defect.

Plaintiff does not dispute that diversity is determined at the timing of the filing of the Complaint. Nor does Mr. Doe dispute that an individual's "domicile" is his or her "true, fixed, and permanent home and principal establishment." *Eastman v. Univ. of Mich.*, 30 F.3d 670, 672-673 (6th Cir. 1994). Instead, Plaintiff contends that the Complaint's use of the word "residence" does not warrant dismissal because Plaintiff is indeed a citizen of North Carolina, and the Sixth Circuit has historically upheld the long-standing presumption that "[t]he place where a man lives is properly taken to be his domicile until facts adduced establish the contrary." *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 391 (6th Cir. 2016) *quoting D.C. v. Murphy*, 314 U.S. 441, 455 (1941) (finding no reason to reject the residency-domicile presumption.).

The Complaint alleges that Plaintiff "currently resides in Southern Pines, North Carolina." (ECF. No. 1, PageID.2.) In flatly ignoring the residency-domicile presumption, Silliman argues that the Plaintiff's residency in North Carolina is irrelevant. *See Mason*, 852 F.3d at 390 *quoting*

*Ennis v. Smith*, 55 U.S. 400 (1852). Notably, Silliman adduces no facts that even suggest Plaintiff is not domiciled in North Carolina. *See Mason*, 842 F.3d at 391 (explaining that the residency-domicile presumption stands unless facts to the contrary are presented to the Court). Instead, Silliman maintains that Plaintiff conceded that she is not domiciled in North Carolina. Plaintiff never made such a concession, nor is Silliman's claim factually accurate.

Plaintiff is domiciled in North Carolina. (*See* Ex. A, ¶ 13). Plaintiff and her family have been domiciled in North Carolina since 2007. (*Id.* at ¶ 4). The address that Plaintiff provided to Calvin as her home of record is her address in North Carolina. (*Id.* at ¶ 11). In August 2017, Plaintiff graduated from the Three Graces Preparatory Academy Home School in North Carolina. (*Id.* at ¶ 6). In May 2018, Plaintiff received a Cosmetology degree and Associates of Arts degree from Sandhills Community College, located in Pinehurst, North Carolina. (*Id.* at ¶ 7). Plaintiff's driver's license was issued in North Carolina. (*Id.* at ¶ 19). Plaintiff's car is registered in North Carolina, and she receives mail there, including mail from Calvin. (*Id.* at ¶¶ 8, 10). Plaintiff was domiciled in North Carolina at the time the Complaint was filed. (*Id.* at ¶ 14). Plaintiff has no intention of moving from North Carolina. (*Id.* at ¶ 12). Such facts firmly establish that Plaintiff's "true, fixed, and permanent home" is North Carolina. *See Art Van Furniture, LLC v. Zimmer*, No. 19-cv-10990, 2019 WL 2433245, at *3 (E.D. Mich. June 11, 2019) (finding that the party established it was domiciled in Michigan where he submitted a declaration stating that his primary residence was in Michigan and he intended to remain in Michigan, and one of his cars was registered in Michigan).

Moreover, contrary to Silliman's contention, diversity is determined at the timing of the filing of the Complaint and not at the time of the events giving rise to the cause of action. *See Napletana v. Hillside College*, 385 F.2d 871, 872 (6th Cir. 1967) (holding that diversity jurisdiction

is determined at the time of the filing of the complaint.) Ms. Doe was raped and drugged during the Program in the Philippines. However, at all times before and after the filing of the Complaint Plaintiff was domiciled in North Carolina. (*See* Ex A). Indeed, Plaintiff had returned to her primary residence in North Carolina prior to the filing of this Complaint. Therefore, diversity jurisdiction was present at the time the Complaint was filed. *See id.* However, in the event this Court finds that diversity jurisdiction was not adequately pled, the proper remedy is to grant Plaintiff leave to amend the complaint rather than dismissal. *See Stern v. Beer*, 200 F.2794 (6th Cir. 1952) ("Where defendant was [] served with summons and complaint, which alleged that plaintiff was resident of Michigan and defendant of New York, allowing plaintiff to amend complaint to allege parties' citizenship in such states instead of residence, and thereafter to amend complaint further to allege that, as of date of filing of original complaint and thereafter, parties were citizens of such states was proper.")*; see also Jackson v. Heh*, No. 98-4420, 2000 WL 761807, at *9 (6th Cir. 2000) (stating that "§ 1653 encourages courts to allow plaintiffs to amend their pleadings to allege jurisdiction").

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as sufficiently alleged in the Complaint, and Silliman's motion should therefore be denied. In the alternative, Plaintiff respectfully requests that this Court grant leave to amend the statement of jurisdiction.

## II.      THIS COURT HAS SUPPLEMENTAL JURISDICTION BECAUSE ALL OF MS. DOE'S CLAIMS ARISE FROM THE SAME NUCELOUS OF OPERATIVE FACT.

Silliman avers that should diversity not exist, which it does, Plaintiff cannot rely on federal question jurisdiction for the state-law claims because supplemental jurisdiction is not proper. In doing so, Silliman misapplies the long-standing principle that federal courts have "broad discretion to exercise [their] supplemental jurisdiction." *Williams v. City of Detroit*, No. CIV. 06-12809, 2006 WL 1897295, at *2 (E.D. Mich. July 11, 2006); *see* 28 U.S.C. § 1367I. As In initial matter, Plaintiff

does not rely on federal question jurisdiction to establish subject matter jurisdiction. (*See* ECF No. 1, PageID.2, ¶8 (alleging "[t]his Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because plaintiff does not share citizenship with any defendant and the amount in controversy exceeds $75,000.").) However, assuming *arguendo* that she did, this Court would have supplemental jurisdiction over all eight state-law claims.

Federal courts are empowered to hear both state and federal claims where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative fact. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). As applied here, the state-law claims against all Defendants, and the Title IX claim against Calvin, all arise from the same drugging and rape of Plaintiff while on the Program. (ECF No. 1, PageID.3-29.) Pursuant to the MOA, the Program was a collaborative undertaking and the final program plan was to be created by Silliman with final approval from Calvin. (ECF No. 1, PageID.32-33.) The fact investigation Plaintiff will conduct into the planning and implementation of the Program, and lack thereof, undoubtedly will require discovery from Silliman and Calvin relating to the same facts. In a similar case in Illinois, the court found that a student's state tort claims of assault and battery against the perpetrator shared the same nucleus of operative fact with its related Title IX claim against the university because the overlap between the investigation into the claims and facts "was both clear and strong." *Pogorzelska v. VanderCook Coll. of Music*, 442 F. Supp. 3d 1054 (N.D. Ill. 2020) (stating that "the Seventh Circuit has [] held that the connection between a failure to investigate claim and a sexual assault claim are enough to justify supplemental jurisdiction"). While not binding, this case demonstrates precisely how state tort claims and a Title IX claim arising from the same assault share a nucleus of operative fact, even where the Title IX claim is asserted against one defendant.

Silliman takes no position on this aspect of the supplemental jurisdiction inquiry, but rather argues that the state-law claims predominate over the Title IX claim. (ECF No. 20, PageID.8.) However, on a motion to dismiss pursuant to F.R.C.P. 12(b)(1), the plaintiff must only show that the complaint alleges a claim under federal law, and that the claim is substantial. *Musson Theatrical, Inc. v. Fed. Exp. Corp.,* 89 F.3d 1244, 1248 (6th Cir. 1996), *amended on denial of reh'g,* No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998). A federal claim is substantial unless a "prior decision inescapably render[s it] frivolous." *Transcontinental Leasing, Inc. v. Michigan National Bank of Detroit,* 738 F.2d 163, 165 (6th Cir.1984). A plaintiff "can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical, Inc.*, 89 F.3d at 1248.

Here, Silliman points to no case law that renders Plaintiff's Title IX claim "frivolous," nor can it. Plaintiff pleads a Title IX claim against Calvin with respect to its policy of deliberate indifference to sexual violence. Case law shows that an institution may be liable for instances of sexual violence where "a third party's actions are the direct result of an official policy." *Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788, 804 (M.D. Tenn. 2016); *see also Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1178–79 (10th Cir. 2007). These cases, known as pre-assault claims, arise where the Title IX violation "is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program." *Simpson¸* 500 F.3d at 1178. Plaintiff pleads a substantial basis for her Title IX claim and more the satisfies the "any arguable basis" standard for supplemental jurisdiction.

Finally, Silliman's position also disregards the interests of comity, judicial economy, and convenience that make up the final factor for supplemental jurisdiction. Plaintiff alleges, *inter alia*,

that Calvin and Silliman failed to adequately plan, staff, supervise, and train faculty and staff for the Program. (ECF. No. 1, PageID.3-29.) These allegations are central to both the Title IX claim against Calvin and the state-law claims against all Defendants. Because the factual allegations that underlay all claims substantially overlap, it would be more efficient and preserve judicial resources to conduct discovery just once.

Accordingly, this Court would have supplemental jurisdiction over the state-law claims even if diversity jurisdiction did not exist, and Silliman's motion to dismiss should be denied.

## III. THE EXERCISE OF PERSONAL JURISDICTION OVER SILLIMAN IS PROPER.

A federal court sitting in diversity has personal jurisdiction over a defendant if a court of the state in which in sits would have such jurisdiction. *Kerry Steel, Inc. v. Paragon Industries*, 106 F.3d 147, 148 (6th Cir. 1997). The determination of whether a state has jurisdiction over an out-of-state defendant is generally a two-part inquiry: i) whether the state's long-arm statute allows jurisdiction, and ii) that the due process requirements of the Constitution are met. *Id.* at 149. Michigan's long-arm statute extends both "limited" and "general" jurisdiction over nonresident corporations. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). Relevant here, limited jurisdiction extends only to claims arising from the defendant's activities that were either in Michigan or had an in-state effect. *Id.*; M.C.L.A. §§ 600.715. More specifically, pursuant to section 600.715(1), "[t]he transaction of any business within Michigan by a nonresident, as will support exercise of limited personal jurisdiction under Michigan long-arm statute, is established by the slightest act of business in Michigan." *Neogen Corp.*, 106 F.3d at 888.

With respect to due process, the relevant inquiry is whether the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would not comport with "traditional notions of fair play and substantial justice." *Theunissen*, 935 F.2d at

1459-1460, *quoting International Shoe Co. v. State of Washington*, 326 U.S. 310, 326 (1945). The

Sixth Circuit has historically applied a three-part test, referred to as the "*Mohasco* test," as follows:

i) whether the defendant purposefully availed himself of the privilege of acting in the forum state

or causing consequence in the forum state, ii) whether the cause of action arose from the

defendant's activities in the forum, and iii) whether the exercise of jurisdiction is reasonable.

*Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). When

the nonresident defendant is also foreign, courts must also weigh the reasonableness of the "unique

burdens placed upon one who must defend oneself in a foreign legal system." *Id. quoting Asahi*

*Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987).

> **A.** **Silliman is subject to limited personal jurisdiction in Michigan because it transacted business here.**

As an initial matter, Silliman argues that the Complaint asserts that it is subject to general

jurisdiction in Michigan. (ECF No. 20, PageID.9). Silliman's argument both misreads the

Complaint and conflates Michigan's personal jurisdiction statutes. The Complaint states that

jurisdiction over Sillimaan is proper because it "transacted business within the state of Michigan

and subjected itself to Michigan law under the terms of the Memorandum of Agreement with

Calvin." (ECF No. 1, PageID.3, ¶10). This statement of jurisdiction is not one of general

jurisdiction, but of limited personal jurisdiction pursuant to M.C.L.A. § 600.715, which states in

pertinent part as follows:

> [E]xistence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting an action for tort.

As conceded by Silliman, § 600.715(1) has been interpreted very broadly. (ECF No. 20, PageID.15.) Indeed, the Sixth Circuit concluded that "the transaction of any business" is established by even "the slightest act of business in Michigan." *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1998); *see Shah v. Nu-Kote Intern., Inc.*, 898 F.Supp. 496, *affirmed* 106 F.3d 401 (concluding that the word "any," for purposes of Michigan long-arm statute providing that transaction of any business within the state is enough to show limited personal jurisdiction, means just what is says, including each and every and the slightest.)

Here, the Complaint alleges that Silliman has contracted with Calvin, a Michigan university, to plan and oversee a program for Michigan students. (ECF No. 1, PageID.8.) The MOA, executed by both Silliman and Calvin, created a series of obligations that Silliman owed to Michigan students, namely the security and safety of the students throughout the Program. (*Id*. at PageID.32-34.) In furtherance of that, the MOA required that Silliman submit the proposed program, and any changes, to Calvin for approval. (*Id.*) Moreover, the MOA contains a clause which selects Michigan as the forum state. (*Id.*) Thus, because Silliman was contractually required to work with Calvin, a Michigan university, the only appropriate conclusion is that Silliman transacted business in Michigan. *See Lanier*, 843 F.2d at 908 (holding that a defendant transacted business in Michigan through its mail and telephone contacts with Michigan residents); *see also Neogen*, 106 F.3d (holding that defendant transacted business in Michigan when it accepted blood samples for testing from Michigan residents, made those results available to said customers, and accepted payment via mail from Michigan).

**B.      Silliman purposefully availed itself to the privilege of conducting business in Michigan.**

Once it is determined that the long-arm statue applies, courts must then evaluate whether the exercise of jurisdiction comports with due process requirements. *Mohasco*, 401 F.2d at 381. To satisfy the first prong of the *Mohasco* test, a plaintiff must establish that the nonresident defendant purposefully availed itself to the privilege of acting in the state or that it caused a consequence in the state. *Mohasco*, 401 F.2d at 381.  "'[P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." *Neogen Corp.*, 282 F.3d at 891. Stated differently, the first *Mohasco* prong is satisfied when the nonresident defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State 'and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.'" *CompuServce, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1989).

Silliman argues that it does not transact business in Michigan because it does not have any physical presence in Michigan. (ECF No. 2, PageID.12.) Silliman additionally argues that it has no officers, directors, or employees in Michigan. (*Id.*) With respect to the application of limited personal jurisdiction under the long-arm statute, Silliman makes the singular argument that the MOA, described as a "single contact," has no application to the claim asserted against it. (*Id.* At PageID.16.) Silliman's argument is flawed in its foundation.

As discussed *supra*, Plaintiff concedes that Silliman is not "at home" in Michigan such that general personal jurisdiction over it is proper. In addition, it is axiomatic that if a plaintiff can demonstrate purposeful availment, "the absence of physical contacts with the forum sate will not

defeat personal jurisdiction over a non-resident defendant." *Bridgeport Music, Inc. v. Still N The Water Pub.,* 327 F.3d 472, 479 (6th Cir. 2003). Thus, Silliman's lack of physical presence in Michigan is of no consequence. Instead, a review of the circumstances makes clear that Silliman has purposefully availed itself to the privilege of acting in Michigan.

The Complaint alleges that Silliman and Calvin entered into the MOA whereby the parties "agreed to develop collaborative activities in academic areas of mutual interest, on the basis equality and reciprocity." (ECF No. 1, PageID.6, ¶ 28.) In doing so, Silliman agreed to "accept such collaborative offer and provide CALVIN's students with the appropriate cultural exposure" and "prepare the program." (*Id.* at PageID.6, ¶ 29.) In exchange, Silliman received payment from Calvin students in the amount of $19,130 ($870/student). (*Id.* at PageID.33.) The amount was to be paid the day the Calvin students arrived at Silliman's campus. (*Id.*) Silliman was required to submit its plan for the Program to Calvin for approval. (*Id.* at PageID.32-33.) Pursuant to the MOA, Silliman agreed to owe a duty of care to the student participates to the extent that it was "responsible for [the students'] security and safety when they are outside the campus during business and cultural exposures." (*Id.*) Perhaps most notably, the MOA provides: "[i]n the event that issues arise under this agreement, said issues shall be resolved in accordance with the laws of the State of Michigan, United States of America." (*Id.* at PageID.34). Stated differently, Silliman *agreed* to be hauled into a Michigan court should a dispute arise under the MOA—the very agreement outlining Silliman's responsibilities for the Program during which Ms. Doe was raped.

Silliman's execution of the MOA, and its providing services to Michigan students, is sufficient to find that it purposefully availed itself to the privilege of conducting business in Michigan. In *Tobin v. Astra Pharmaceutical Products, Inc.* the Sixth Circuit found that the Dutch manufacturer of products had purposefully availed itself to privilege of acting in the United States

when it had specifically contracted to market products in the United States. 993 F.2d 528 (6th Cir. 1993). The *Tobin* Court's reasoning was that the Dutch company's products had not merely entered the stream of commerce of the United States through a distributor, but rather the company made a deliberate decision to market their product in all 50 states, including the forum state. *Id.* at 543. Thus, because it sold and marketed its product with a direction in mind, it could not escape liability. *Id.* at 544.

Similarly, here, Silliman made the deliberate decision to enter into the MOA with Calvin to "develop collaborative activities in academic areas of mutual interest" for Calvin students. (ECF No. 1, PageID.32.) Silliman did not merely create its own program that Plaintiff found on her own. Silliman's joint program with Calvin was promoted on Calvin's website, targeted at Calvin's students, and was implemented in conjunction with Calvin. (*See* ECF No. 1, PageID.84) (showing a webpage from Calvin's website containing information about the subject interim program).) Indeed, Silliman collected payment from all twenty-two (22) Michigan students. (*Id.*, at Page.ID. 33.) Silliman cannot now claim that although it executed an MOA with Calvin, created and hosted a program for Calvin students, and collected payment from Calvin students, it should not face liability when the program goes awry. *See Mott v. Schelling & Company*, No. 91-1540, 1992 WL 116014 (6th Cir. 1992) ("Clearly Schelling cannot reasonably expect to sell a potentially dangerous product into the United States, exact its price, and then shirk any obligations that arise when its machine goes awry.").

Indeed, in executing the MOA with Calvin, which Silliman knew was based in Michigan, Silliman effectively was reaching out to students in Michigan and created obligations to those students, including its duty of care expressly created in the MOA. (ECF No. 1, PageID.32); *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) *citing Burger King v.*

*Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("The Supreme Court has emphasized, with respect to interstate contractual obligations, that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequence of their activities."). Therefore, this Court should find that Silliman purposefully availed itself of the privilege of conducting business in Michigan. *See Chrysler Corp. v. Traveleze Industries, Inc.*, 527 F.Supp. 246 (E.D. Mich. 1981) (holding that a Buyer of chassis for recreational vehicles was subject to jurisdiction in Michigan for purposes of breach of contract suit, where buyer, by signing contract knowing that principal place of seller was in Michigan, purposefully availed itself of acting in Michigan).

The MOA provides a second and independent basis for the exercise of jurisdiction over Silliman, because it agreed to Michigan as the forum state when should a dispute arise under the MOA. (ECF No. 1, PageID.34); *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) ("The use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court."). Notably, Silliman does not dispute the validity or enforceability of the forum selection clause. Rather, it argues that the MOA has no application to the tort claim asserted against Silliman. (ECF No. 20, PageID.16.) Contrary to Silliman's contention, the instant dispute did arise under the MOA as it stems from a rape that occurred by a Silliman student on the precise program that was the subject of the MOA. (ECF No. 20, PageID.16.) What Silliman fails to appreciate is that the tort against it, a claim for negligence, quite literally arises from the obligations it undertook in the MOA. Even if this Court found that the form selection clause is not operable as between Plaintiff and Silliman, at a minimum, the

clause "reinforce[s] [a] deliberate affiliation with the forum State and reasonable foreseeability of possible litigation." *Burger King*, 471 U.S. at 482.

Accordingly, Silliman has purposefully availed itself to the privileges of conducting business in Michigan.

**C.    Plaintiff's allegations arise from Silliman's activities with Calvin**.

The second prong of the *Mohasco* test questions whether the cause of action arises from the defendant's forum activities. *Mohasco*, 401 F.2d at 381. Assuming that Plaintiff's allegations are true, as this Court must, her claim against Silliman arose from its activities with Calvin pursuant to the MOA. The Complaint alleges that Plaintiff was drugged and raped by a Silliman "buddy" during the Program. The Program is the very subject of the MOA. More specifically, the MOA provides that Calvin and Silliman "agreed to develop collaborative activities in academic areas of mutual interest" and Silliman "shall prepare the program plan." (ECF No. 1, PageID.32-33.) Silliman also agreed to select students from its own university to act as buddies throughout the Program. (*Id.* at PageID.33.)

As discussed *supra¸* Silliman agreed to be "responsible for [the CALVIN students'] security and safety when they are outside the campus during business and cultural exposures." (*Id.*) While Silliman argues that the MOA is not related to the claim against it, it is this very obligation, as outlined in the MOA, that led to Plaintiff's rape. Silliman did not adequately plan the program, vet, train, and evaluate its buddies, or supervise the buddies and participants. These were the precise obligations that Silliman had under the MOA to serve Calvin students. Simply put, Plaintiff's rape resulted from the Silliman's agreement with Calvin to plan and host the Program and the conduct it undertook in furtherance of the same. *See Theunissen*, 935 F.2d at 1461 (finding that the cause of action arose from the defendant's forum activities where the injury

resulted from the conduct of defendant's while the plaintiff was at the latter's place of business pursuant to a contract between the plaintiff's employer and the defendant); *see also Tobin*, 993 F.2d at 544 (nothing that "the second element…is satisfied" because "Plaintiff's cause of action arose from defendant's activities" in causing the product to be sold in the state). Furthermore, that Plaintiff's rape took place in the Philippines as opposed to Michigan does not break the nexus between the cause of action and the forum state. *See id.* ("[W]e see no reason why the mere fact that Appellant sustained his injury across the border in Canada should disturb this finding").

### D. Silliman's contacts with Michigan are substantial enough such that the exercise of personal jurisdiction is reasonable.

The final prong of the *Mohasco* test asks whether the nonresident defendant's contacts bear a substantial enough connection to Michigan to make the exercise of jurisdiction reasonable. *Mohasco*, 401 F.2d at 381. The Sixth Circuit will infer reasonableness where the first two criteria are satisfied. *Theunissen*, 935 F.2d at 1461 (stating that "we reiterate our previously announced view that an inference of reasonableness arises where the first two criteria are met and that only the unusual case will not meet this third criterion") (internal quotation marks omitted). The Supreme Court introduced the standard by which reasonableness was to be measured in *Asahi Metal*, concluding that courts must balance "the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." 480 U.S. at 113. There, the Supreme Court determined that the burden of the Japanese defendant to travel to the forum state, coupled with the fact that the primary action had already settled, and that the remaining third-party plaintiff was not a citizen of the forum state, made jurisdiction unreasonable. *Id.* at 114. In contrast, the *Theunissen* court found that jurisdiction was reasonable where the plaintiff was a citizen of Michigan and that Michigan had interests for the plaintiff to resolve his dispute and to regulate the conduct of foreign corporations doing business in its state. *Theunissen*, 935 F.2d at 1462.

In applying the *Asahi Metal* standard to the instant case, the exercise of jurisdiction over Silliman is reasonable for several reasons. First, Silliman consented to Michigan as the forum when it executed the MOA. Additionally, in negotiating and executing a contract with a Michigan university, Silliman has demonstrated its familiarity with the United States legal system. *See Tobin* 993 F.2d at 544 ("Duphar has shown its familiarity with the United States administrative and legal process by undergoing the formidable tasks of obtaining FDA approval…[this] indicate[s] that Duphar will not be lost in our complex legal system"). Second, the first two prongs of the *Mohasco* test are satisfied, thus, there is an inference in favor of reasonableness.

Finally, Plaintiff, was drugged and raped on a trip planned and sponsored by both Calvin and Silliman. Plaintiff has suffered greatly since and has an overwhelming interest in obtaining relief from both universities. This is especially true where Silliman assumed a duty for the security and safety of Calvin students on the Program. (ECF No. 1, PageID.34.) Michigan certainly has an interest in ensuring that foreign universities, who voluntarily assume a duty for the security and safety of Michigan students, exercise the proper standard of care. Therefore, this Court should find that the exercise of limited personal jurisdiction over Silliman is proper. *Widger Chemical Corp. v. Chemfil Corp.*, 601 F. Supp. 845 (E.D. Mich. 1985) (holding that a Canadian corporation had requisite minimum contacts with Michigan to justify assertion of personal jurisdiction over the corporation, where, inter alia, the corporation entered into a contract with resident Michigan corporation, subject by its terms to Michigan law, and tort claims of arose out of corporation's activities in Michigan, even though plaintiff was not a party to any contract with the corporation; connection with Michigan was substantial enough, focusing on state's interest in resolving the conflict, to make the exercise of jurisdiction reasonable.).

## IV. PLAINTIFF ADEQUATELY PLEADS A CLAIM FOR NEGLIGENCE AS AGAINST SILLIMAN.

Pursuant to F.R.C.P. 12b(6), Silliman moves to dismiss the claim for negligence on the ground that Plaintiff has failed to state a cognizable claim because the conduct was unforeseeable. In support of this argument, Silliman directs this Court to a series of cases that have no bearing on whether Plaintiff's rape was foreseeable. For instance, Silliman's reliance on *Schmidt v. Youngs,* is entirely irrelevant because that case involved the legal question for whether one golfer had a duty to issue an audible warning to another golfer before hitting the ball.544 N.W.2d 743, 745 (Mich. Ct. App. 1996) (holding that a legal duty is a question of law). Silliman also attempts to persuade this Court that it is a "long held" principle of Michigan law, "that criminal activity of third parties is no foreseeable" by directing this Court to *MacDonald v. PKT, Inc.* (ECF No. 20, PageID.21); 628 N.W.2d 33 (Mich. 2001). However, *MacDonald* dealt with the liability of merchant and premises owner, not a university that affirmatively assumed a duty of the security and safety of the Plaintiff. *See* 628 N.W.2d at 38. Moreover, in *MacDonald* the Plaintiff had the opportunity to submit evidence of the foreseeability of the respective event, and the defendant's prior knowledge of such events. *MacDonald*, 628 N.W.2d at 41.

At this stage, Plaintiff is not required to *establish* her claim for negligence against Silliman, but only need to allege a legal cognizable claim. *See HDC, LLC*, 675 F.3d at 614 (holding that the motion to dismiss standard does not require detailed factual allegations but rather allegations stating a legally cognizable claim). Plaintiff alleges that Silliman owed a duty of care to Ms. Doe as a participant in the Program. (ECF No. 1, PageID.24, ¶ 139.) This duty was voluntarily assumed by Silliman pursuant to the MOA. (*See* ECF No. 1, PageID.25, ¶ 141; PageID.33) ("[Silliman] shall be responsible for the safety and security of CALVIN students while they are on campus…[and[ when they are outside campus").) Silliman's duty also arose from the special

relationship with Plaintiff when she entrusted Silliman with control over her safety and security and when Silliman selected "buddies" for Calvin participants. (*Id.* at PageID.25, ¶ 142.)

The duty included, but was not limited to, "a duty to exercise reasonable care in protecting Program participants from the foreseeable risk of sexual assault…[and] a duty to exercise reasonable care in providing for the safety and security during the Program." (*Id.*) Plaintiff also alleged that her assault was foreseeable and likely, and that Silliman breached its duties by its acts and omissions, and as a result of its actions and omissions. (*Id.* at PageID.25-26.) As a result of Silliman's actions and/or inactions, Plaintiff suffered and continues to suffer pain of mind and body, emotional distress, and more. (*Id.* PageID.26, ¶146.) Accordingly, accepting all the alleged facts as true, Plaintiff has stated a claim for negligence as against Silliman.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this court deny Defendant Silliman University's Motion to Dismiss her negligence claim. In the alternative, Plaintiff requests leave to amend the Complaint with respect to her statement of citizenship.

Dated: June 10, 2022

Respectfully submitted,

By: /s/ Esther C. Yahnig
ESBROOK P.C.
Esther C. Yahnig
Christopher J. Esbrook
Erika Giwa-Amu
321 N. Clark Street, Suite 1930
Chicago, IL 60654
Telephone: 312.319.7681
christopher.esbrook@esbrook.com
esther.yahnig@esbrook.com
erika.giwa-amu@esbrook.com

*Co-Counsel for Plaintiff Jane Doe*

By: /s/ Allison Sleight
THACKER SLEIGHT
Allison Elizabeth Sleight
44 Cherry Street SE
Grand Rapids, Michigan 49503
Telephone:616.888.3810
allison@thackersleight.com

*Co-Counsel for Plaintiff Jane Doe*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

JANE DOE,

        Plaintiff,

        v.

CALVIN UNIVERSITY and
SILLIMAN UNIVERSITY,
DWIGHT TENHUISEN

        Defendants.

Case No. 1:21-cv-1071

HONORABLE PAUL L. MALONEY

**CERTIFICATE OF RULE COMPLIANCE**

---

### CERTIFICATE OF RULE COMPLIANCE

    Esther Yahnig, counsel for Plaintiff Jane Doe, certifies that Plaintiff's Memorandum of Response in Opposition to Defendant Silliman University's Motion to Dismiss, contains 6,467 words, using Microsoft Office 365 2022, in compliance with W.D.LCivR 7.2(b)(i)(ii).

Dated: June 10, 2022

                    Respectfully submitted,

                    By: /s/ Esther Yahnig
                    Esther C. Yahnig
                    Christopher J. Esbrook
                    Erika Giwa-Amu
                    321 N Clark Street, Suite 1930
                    Chicago, Illinois 60654
                    Telephone: 312.319.7681
                    christopher.esbrook@esbrook.com
                    esther.yahnig@esbrook.com
                    erika.giwa-amu@esbrook.com

                    *Co-Counsel for Plaintiff Jane Doe*

                    By: /s/ Allison Sleight
                    THACKER SLEIGHT
                    Allison Elizabeth Sleight

44 Cherry Street SE
Grand Rapids, Michigan 49503
Telephone:616.888.3810
allison@thackersleight.com

*Co-Counsel for Plaintiff Jane Doe*