UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JANE DOE,

    Plaintiff,                              Case No: 1:21-cv-01071

v                                                 HON. PAUL L. MALONEY

CALVIN UNIVERSITY,
SILIMAN UNIVERSITY, and
DWIGHT TENHUISEN,

    Defendant.

_____

## DEFENDANT SILLIMAN UNIVERSITY'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

**I. PLAINTIFF DID NOT PROPERLY PLEAD SUBJECT MATTER JURISDICTION.**

Plaintiff interchangeably uses the terms residence and domicile. These terms do not have the same meaning. *Stifel v. Hopkins,* 477 F.2d 1116, 1120 (6th Cir. 1973). Courts have been very clear that pleading residency, only, is grounds for dismissal. *Guaranty Nat'l Title Co. v. J.E.G. Associates,* 101 F.3d 57, 59 (7th Cir. 1996). As a result, Plaintiff's pleading that she *currently resides* in North Carolina at the time of filing the Complaint fails as a matter of law.

In an effort to cure her defective pleadings, Plaintiff effectively attempts to amend her pleadings through an affidavit regarding her citizenship to establish her domicile. The affidavit is under seal. However, Plaintiff alleges in her motion that she graduated from high school in North Carolina, provided a North Carolina address to Calvin University, and was issued a North Carolina

driver's license.  (ECF No. 27-1, PageID.377).  Other than Plaintiff's word, there is no offer of proof that any such averments are indeed true.

Lastly, Plaintiff suggests that she should be permitted to amend her pleadings to correct the legal deficiency.  Such a measure seems to merely give a reprieve to a party to correct defective pleadings when dismissal is otherwise a proper consideration.  This Court should not permit this recourse.

If this Court finds that subject matter jurisdiction is not proper, it should also conclude that Plaintiff's state-law claims should be dismissed for lack of supplemental jurisdiction.  Plaintiff's Title IX claim is against Calvin, only.  Without subject matter jurisdiction, there is no jurisdictional basis for Plaintiff's single tort claim against Silliman to rest.  Further, the Title IX claim is largely based on Calvin's policies related to sexual assault and harassment training, not the investigation of the alleged wrongdoing.  (ECF No. 1, PageID.27).  As result, there is no nexus between the federal Title IX claim and the tort claims that are the primary subject of the Complaint.

**II.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER SILLIMAN UNIVERSITY.**

Plaintiff limits its basis for personal jurisdiction to only limited jurisdiction.  In doing so, Plaintiff fails to establish this Court has limited jurisdiction over Silliman.  According, Silliman's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) should be granted.

1.  *Purposeful Availment*.

First, Plaintiff has not established that Silliman purposely availed itself to Michigan. Plaintiff rests almost exclusively on the fact that Silliman contracted with Calvin.  This single contract alone is insufficient.  Entering into a contract, without more, does not alone establish minimum contacts.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

"It is still incumbent upon the plaintiff to establish the requisite minimum contacts, as a condition to requiring an absent party to defend itself on the plaintiff's turf, and those contacts must still be sufficient to satisfy 'traditional notions of fair play and substantial justice.'" *LAK Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir. 1989).  See also, *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997).  This district has followed this principle in finding that a contractual relationship alone is insufficient to support a finding of personal jurisdiction.  See, *Miller v. Axawinterthur Ins. Co.*, 2011 U.S. Dist. LEXIS 163460 (W.D. Mich. May 12, 2011).

In contrast, limited jurisdiction was held to be proper in Michigan where a Michigan dentist specializing in endodontics sought certification from an Illinois-based entity. *Lanier v. American Bd. Of Endodontics*, 843 F.2d 901 (6th Cir. 1988).  The Sixth Circuit concluded that the purpose of the contract was to have "ongoing, far-reaching consequences in the Michigan dental services market." *Lanier*, 843 F.2d at 911.

Because a contract alone is insufficient, the presence of "certain factors in addition to the contract" must be found for there to be purposeful availment. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007).  Factors to consider are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*.  For example, the Court found purposeful availment in the *Air Prods & Controls, Inc* case where the parties had a course of dealing for almost nine years in which hundreds of thousands of dollars were transacted. *Id*.  The parties also had several hundred communications, including phone calls, emails, facsimiles, and ordinary mail. *Id*.

Here, no such fact" exist.  Other than the MOA, there are no contacts.  Silliman has no physical presence in Michigan.  Silliman received $19,130 from Calvin.  This is a far cry from the

3

hundreds of thousands of dollars the Sixth Circuit has otherwise found compelling.  Further, the MOA was for a term of two weeks, not the years-long relationships that more often weigh in favor of jurisdiction.  *Silliman's Motion to Dismiss, Exhibit A* (ECF 20-2, PageID.344).  And by extension, there are not "several hundred occasions through telephone, email, facsimile, and ordinary mail correspondence" to otherwise support purposeful availment.  *Id*.  There is also no evidence that the Silliman / Calvin relationship was intended to long-term.  Afterall, the parties signed the MUA in December 2019, an agreement that contemplate a very short relationship.

Lastly, Plaintiff argues that Silliman consented to jurisdiction in Michigan in the MOA.  This is not true.  The MOA had a choice-of-law provision only.  Silliman did not consent to being hauled into any Michigan court related to allegations akin to Plaintiff's assertion of sexual assault.

*2. Plaintiff's tort claim against Silliman does not arise out of the MOA*.

Plaintiff points to a series of provisions of the MOA in support of the position that her allegations arise Silliman's activities in Michigan.  Plaintiff also asserts that "Silliman did not adequately plan the program, vet, train, and evaluate its buddies, or supervise the buddies and participants."  *Plaintiff's Opposition to Motion to Dismiss*.  (ECF No. 27-1, PageID.388).  None of these claims are compelling.  This is because the alleged conduct occurred after the program concluded, occurred off of the Silliman campus, and relates to sexual assault, i.e. criminal conduct, that was otherwise unforeseeable to Silliman. As a result, Plaintiff's reliance on *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) is completely misplaced.  This prong is not satisfied.

*3. It is not reasonable to assert limited jurisdiction against Silliman in Michigan.*

Reasonableness is required because "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has

purposefully engaged in forum activities." *Nationwide Mut. Ins. Co. v. Tamariz-Wallace*, No. C2-08-1148, 2009 U.S. Dist. LEXIS 51857, 2009 WL 1850612, at *5 (S.D. Ohio June 19, 2009) (citing *Burger King Corp. Corp.*, 471 U.S. at 477-78; *World-Wide Volkswagen Corp.*, 444 U.S. at 292). "'In considering whether the exercise of jurisdiction is reasonable, the court should consider, amongst others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiffs interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy.'" *Id*. (quoting *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 554-55 (6th Cir. 2007)).

First, the burden on Silliman is significant. Potential travel from the Philippines for court hearings and depositions is unreasonable. Silliman entered into a 2-week long contract with Calvin and is now a defendant in a lawsuit based on Plaintiff's allegations of a sexual assault that occurred after the program ended and off of the Silliman premises.

Second, Michigan appears to have only a limited interest in having jurisdiction over Silliman. Again, Silliman has no physical presence in Michigan, including no officers, directors, employees, or offices. There is no evidence that Silliman openly advertises in Michigan. Instead, the only contact Silliman has with Michigan is the MOA. Contrary to Plaintiff's almost exclusive reliance on this single contact, a contract alone is insufficient to confer jurisdiction. See, *Burger King Corp.*, 471 U.S. at 475.

Third, Plaintiff filed this lawsuit, thus it comes as no surprise that she claims to have an interest in seeking relief. However, relief against Silliman is not proper. Procedurally, this Court should not exercise jurisdiction over Silliman. And the substantive claim against Silliman is not enforceable because there is no evidence whatsoever that Silliman had any duty to protect Plaintiff from unforeseeable criminal conduct.

Fourth, North Carolina may have an interest in protecting the rights of its citizens. Afterall, Plaintiff goes to great lengths to establish her citizenship in North Carolina, and distance herself from Michigan.

In summary, Plaintiff has not established that this Court has personal jurisdiction over Silliman. There is no purposeful availment because Silliman's only contact with Michigan is the MOA, and there is not otherwise a factual basis to conclude the minimum contacts test is satisfied. Plaintiff's claim also does not arise out of Silliman's single contact with Michigan; rather, Plaintiff's claim arises out an alleged sexual assault that was unforeseeable in nature. And lastly, it is unreasonable to require Silliman to be subject to jurisdiction in Michigan based on the facts of this case and Plaintiff's allegations.

### III.   THE CONDUCT THAT IS THE SUBJECT OF PLAINTIFF'S COMPLAINT WAS UNFORESEEABLE.

This Court acknowledged the unforeseeable nature of criminal conduct in *Doe v Cascade Charter Twp*. 2019 U.S. Dist. LEXIS 241035 (W.D. Mich., July 23, 2019). This Court cited the case *Babula v Robertson*, 212 Mich App 45; 536 NW2d 834 (1995). In *Babula*, the Court of Appeals held that the criminal conduct by the babysitter's husband—who had no history of criminal misconduct or sexual deviance—was "wholly unforeseeable" to his wife and thus concluded that the general duty of care she had assumed "did not extend to the specific harm done in the immediate case." *Babula*, 212 Mich App at 838-839. See, *Doe v Cascade Charter Twp*. 2019 U.S. Dist. LEXIS 241035, *11 (W.D. Mich., July 23, 2019). This Court further stated that "*Babula*'s holding is consistent with the general rule in Michigan that there is no legal duty to protect a person from the unforeseeable crimes of a third party." *Cascade Charter Twp*, 2019 U.S. Dist. LEXIS 241035 at 11, citing, *Brown v Brown*, 478 Mich 545; 739 NW2d 313 (2007). "The rationale underlying this general rule is the fact that '[c]riminal activity, by its deviant nature, is

6

normally unforeseeable.'" *Graves v Warner Bros*, 253 Mich App 486, 656 NW2d 195 (2002), quoting *Papadimas v Mykonos Lounge*, 176 Mich App 40, 46-47; 439 NW2d 280 (1989)).

This Court also acknowledged that a "special relationship" exception applies to the principle that criminal conduct is unforeseeable. "For example, innkeepers, common carriers, and employers have a special relationship with their guests, passengers, and employees, such that they have a duty of reasonable care to those parties who are 'readily identifiable as [being] foreseeably endangered.'" *Cascade Charter Twp*, 2019 U.S. Dist. LEXIS 241035 at 11, citing *Graves,*, 253 Mich App 486.

However, even this exception is subject to the foreseeability analysis. *Id*. As stated in *Cascade Charter Twp*: "because even if the BSA Defendants bore a duty to use reasonable care in ensuring that Plaintiff's safety was not endangered, they did not bear a duty to protect Plaintiff from the unforeseeable criminal activity of Drake and Bell. Plaintiff has not alleged any facts which would have put the BSA Defendants on notice that either Drake or Bell would engage in intentional criminal acts—either through their possession of child pornography or their alleged sexual assaults of Plaintiff." *Cascade Charter Twp*, 2019 U.S. Dist. LEXIS 241035 at 13.

Here, Plaintiff has not alleged any facts that Silliman was on notice that the alleged perpetrator had a propensity for sex crimes, or more generally, criminal conduct. The Complaint alleges only information related to sexual assault on college campuses. But there is nothing that indicates Silliman had any reason to know this particular individual was a risk. Accordingly, Silliman's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted.

## **CONCLUSION**

WHEREFORE, Defendant, Silliman University, respectfully requests that this Court grant its motion to dismiss.

Dated:  June 23, 2022　　　　　　　　　KUIPER KRAEMER PC

　　　　　　　　　　　　　　　　　　　By: /s/ Nicholas V. Dondzila
　　　　　　　　　　　　　　　　　　　　　　Nicholas V. Dondzila (P73937)
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Silliman University
　　　　　　　　　　　　　　　　　　　BUSINESS ADDRESS:
　　　　　　　　　　　　　　　　　　　　　　180 Monroe NW, Suite 400
　　　　　　　　　　　　　　　　　　　　　　Grand Rapids, MI  49503
　　　　　　　　　　　　　　　　　　　　　　(616) 454-3700